## BUD INGRAM v. THE STATE.

### No. 4972.   Decided April 3, 1918.

**1.—Theft of Horse—Sufficiency of the Evidence—Alibi.**

Where, upon trial of the theft of a horse, defendant claimed an alibi, but the evidence was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Witness Under Rule—Discretion of Court.**

In the absence of an abuse of the discretion of the court in excusing the officer from the witness rule, there was no error.

**3.—Same—Husband and Wife—Evidence.**

Where the court sustained an objection to the cross-examination of the wife of defendant and her answer to part of the question was favorable to the defendant, there was no reversible error.

**4.—Same—Evidence—Misdemeanor—Theft—Moral Turpitude.**

It has always been held by this court that misdemeanor theft imports moral turpitude, and that a witness can be impeached by showing that he has been convicted for this offense.

**5.—Same—Sentence—Practice in District Court.**

   Where, by an oversight, the defendant had not been sentenced, although
he had already given notice of an appeal and had entered into a recognizance,
there was no error in setting these orders aside during the term of court at
which the defendant had been convicted, and entering proper sentence and an-
nouncing to appellant that unless he entered into a new recognizance he would
be remanded to jail. Following Bundick v. State, 59 Texas Crim. Rep., 9, and
other cases.

**6.—Same—Newly Discovered Evidence—Attorney and Client.**

   It is the rule that an attorney for the defendant is not authorized to take
an affidavit attached to the motion for new trial; besides, the alleged newly
discovered testimony was of impeaching character only.

   Appeal from the District Court of Grayson.   Tried below before the
Hon. C. T. Freeman.
   Appeal from a conviction of the theft of a horse; penalty, two years
imprisonment in the penitentiary.
   The opinion states the case.

   *Charles Crenshaw*, for appellant.—On question of appeal and setting
aside notice of appeal, etc.:   Quarles v. State, 39 S. W. Rep., 668;
Hinman v. State, 54 Texas Crim. Rep., 434, 113 S. W. Rep., 280;
Tucker v. State, 62 Texas Crim. Rep., 46, 136 S. W. Rep., 258.

   *E. B. Hendricks*, Assistant Attorney General, for the State.—On ques-
tion of putting witness under rule and excusing sheriff:   Williams v.
State, 37 Texas Crim. Rep., 147; Siars v. State, 63 id., 567; Johnican
v. State, 48 S. W. Rep., 181; Holmes v. State, 70 Texas Crim. Rep., 214,
156 S. W. Rep., 1172.
   On question of setting aside orders of court during term time:   Col-
lins v. State, 75 Texas Crim. Rep., 534, 171 S. W. Rep., 729; Bundick
v. State, 59 Texas Crim. Rep., 9.

   PRENDERGAST, JUDGE.—Appellant was convicted of horse theft
and his punishment assessed at the lowest prescribed by law.
   He contends the evidence was insufficient to sustain the conviction.
From a study of the statement of facts we have reached the contrary
conclusion.   Appellant's defense was alibi.   He and his wife testified
that he was at home all night in bed on the night the horse was stolen.
The court submitted that issue specially to the jury, which found against
him.   Testimony in behalf of the State shows that some time during
the night of October 26th someone stole from Mr. McDaniel and off
of his premises, his horse, hack, harness and some seed cotton.   The
next morning, when he discovered that his property had been stolen,
he tracked the hack from where it, the horse, cotton, etc., were taken,
out into one of the roads or streets in Sherman.   Mr. Burleson testified
he saw the appellant with this property about 2 o'clock that night, and
that he called to him to stop when he saw appellant with this property,
but instead he put whip to the horse and ran.   He gave chase and be-
fore he could actually catch him appellant jumped from the hack, ran

and escaped. He recovered the property and it was that morning returned to Mr. McDaniel, the owner. Mr. Burleson swore positively to the identity of the appellant. Appellant denied that it was he who Mr. Burleson hailed, chased, etc., and who was in possession of the stolen property at the time. This was a question of fact for the jury. We can not disturb the verdict.

The court did not err nor abuse his discretion in excusing the officer from the rule as explained by his qualification of appellant's bill on that subject.

Appellant introduced his wife as a witness for him, who testified, among other things, that her husband went to bed at their home early in the night in which the horse was stolen, and in substance that he remained in bed all during the night; that she got up first the next morning and left him in bed at the time. On cross-examination the county attorney asked her. Q. "Bud was staying in bed after you got up that morning—he had been browsing about a little, hadn't he?" A. "No, he had not." Q. "Been out foraging a little, hadn't he—have any cotton marks on him—have any cotton on those blue trousers?" Appellant at the time made no objection to the asking or answer of either of these questions. The judge, however, on his own motion, stopped the county attorney and told him that under the decisions of this court it was his duty to so stop him, and he did stop him. The county attorney claimed that the questions were in strict cross-examination of appellant's wife. We think this was true as to the first question. The wife did not answer the last question and her answer to the first clearly was in appellant's favor and not against him. After the court had stopped this cross-examination appellant then objected because the questions were improper and leading, calculated to prejudice him. This bill shows no reversible error.

Appellant himself testified. On cross-examination, evidently for the purpose of impeaching him, the county attorney asked him if he was the same Bud Ingram that had been arrested for theft. He answered that he was. On his redirect examination he testified that he had pleaded guilty to theft in another case within two years from that date. But he denied he was guilty thereof. It has always been held by this court that misdemeanor theft imports moral turpitude and that an accused when testifying can be impeached by showing that he has been convicted for this offense. Appellant's bill on this subject shows no error. (See some of the cases collated by Mr. Branch in sec. 167, p. 101, 1 Branch's Ann. P. C.)

At 11 o'clock on February 1st the court acted on appellant's motion for new trial, overruling it, to which appellant at the time excepted and gave notice of appeal. The court then fixed his recognizance at $1200. He at once with his sureties in open court then entered into the proper recognizance. Appellant, by an oversight, at that time had not been sentenced. Later in the day the court discovered this. The court thereupon set aside the recognizance, ordered him arrested and brought before the court so that sentence could be pronounced upon him. He was arrested, brought before the court, and thereupon duly sentenced. The

court then announced that unless appellant entered into a new recognizance he would be remanded to jail, whereupon appellant entered into a new recognizance and was thereupon released from custody. Appellant objected to all this. It was all done during term time and at the term at which appellant had been convicted. All these proceedings were under the control of the court. The action of the court was correct and proper. Bundick v. State, 59 Texas Crim. Rep., 9; Collins v. State, 75 Texas Crim. Rep., 534, 171 S. W. Rep., 729.

In his amended motion for new trial appellant claimed he had discovered material new evidence. He attached to his motion an affidavit by M. P. Caywood, which was sworn to before his own attorney. It has uniformly and in a great many cases been held by this court that an attorney for a defendant is not authorized to take such an affidavit. (1 Branch's Ann. P. C., sec. 194.) In addition to this, this affidavit discloses that the testimony of this witness would have been solely for the purpose of tending to impeach the State's witness Mr. Burleson. Besides the motion and affidavits are wholly insufficient under the law to entitle him to a new trial on that ground. For authorities see 1 Branch's Ann. P. C., p. 124 et seq. The other affidavit attached by Johnnie Williams shows that his testimony would have been wholly lacking in probative force and inadmissible.

The judgment is affirmed.

*Affirmed.*